May it please the Court, Lola Kingo appearing on behalf of the appellant, Mr. Jesus Emmanuel Jehovah. As the Court is aware, Mr. Jehovah raised several claims against the VDOC defendants. With the Court's permission, I'd like to start by first addressing Mr. Jehovah's communion wine claims, which the District Court decided against Mr. Jehovah at summary judgment. And then I will turn to address Mr. Jehovah's Sabbath cell assignment and Eighth Amendment deliberate indifference claims, which the District Court disposed of sua sponte for failing to state a claim. Starting with Mr. Jehovah's communion wine claims, the VDOC defendants concede that this claim should be remanded with respect to our loop. However, they dispute remand under the First Amendment, respectfully, for the same reasons that the District Court got this claim incorrectly and that the record is incomplete, the Court should remand under the First Amendment as well. The only declaration in the record speaks to whether Mr. Jehovah, excuse me, speaks to whether the VDOC has a compelling interest in denying inmates communion wine, but it also addresses the fact that VDOC allowed inmates to consume wine during communion and then changed its policy over the course of several years to now there's a policy where VDOC only allows clergy who administer communion to consume wine. Respectfully, there's no record to evaluate under the First Amendment whether there were any problems with the previous policy and why VDOC simply cannot do what it had already done in the past. Turning to the religious claims that the District Court summarily dismissed sua sponte, that is, Mr. Jehovah's Arlupa and First Amendment Sabbath observance and cell assignment claims, the VDOC defendants concede that if Mr. Jehovah alleged a substantial burden in his complaint, these claims should be remanded at least under Arlupa, regardless of whether, as the District Court incorrectly held, Mr. Jehovah has an independent constitutional right to the accommodations he has requested. He has alleged a substantial burden with respect to both claims. First, with regard to the Sabbath claims, Mr. Jehovah alleged in paragraph 30 of his complaint that he does not have a job or program and that if he fails to do so, he faces disciplinary action, sanctions, and loss of good time credits. He also noted in his complaint that his ability to work has been conditioned on him not observing the Sabbaths. First, when he had a cleaning job, the VDOC told him specifically that he's required to work or he will be charged for failing to do so. After he lost that job, he had asked for another job, which Mr. Jehovah alleges there are jobs within the VDOC that would allow him to observe the Sabbaths and work the 30 to 40 hours a week that he's required to do. However, since pressing for the observance of his Sabbaths, the VDOC has refused to accommodate him for any or excuse me, refused to approve him for any job that he has applied for, not even jobs that he had previously been approved for. With respect to Mr. Jehovah's Lupa or First Amendment self-assignment claims, the district court made no mention of Mr. Jehovah's allegations in paragraphs 35 and footnote 18 of his complaint that the VDOC defendants have gone out of their way to house him with inmates who are anathema to his life. Importantly, Mr. Jehovah alleges in footnote 18 of his complaint that although VDOC has a policy of housing inmates with other inmates who have similar disciplinary records, criminal records and time left to serve, every single one of his cell assignments after he was housed with a Satanist have been in violation of that policy. It is not that there are no inmates within the VDOC that Mr. Jehovah can be housed with. Indeed, he does allege that in paragraph 38 of his complaint that he had been previously housed with other inmates and had no issues with them. It was only when he started being housed with inmates who violate his religious beliefs that he had concerns about his placements. Finally, turning to Mr. Jehovah's Eighth Amendment claim, the district court dismissed this claim, holding that Mr. Jehovah's allegations amounted to no more than a disagreement over the course of his treatment. To be sure, your honors, a disagreement over the course of treatment would not be actionable. However, that is not what Mr. Jehovah alleges. Indeed, the key to his complaint is that he's alleging that he had serious symptoms that the VDOC physicians acknowledged in part and dismissed in part. And their course of action was to send him to mental health physicians because they concluded they diagnosed him as having these symptoms as a result of mental health issues. Do you think a misdiagnosis is deliberate indifference? Well, misdiagnosis would not be deliberate indifference. However, the VDOC mental health experts rejected the diagnosis that Mr. Jehovah's physical problems or physical symptoms were a result of mental health issues. Yet, and once the physicians knew that. But isn't that a medical decision? It is, your honor. Whether or not mental health issues are causing physical symptoms. It would be, your honor. However, after that, after the rejection of the mental health issue, VDOC's physicians continue to send him to mental health experts without providing him with any other treatment. And we would argue that when they know, because the VDOC physicians knew that Mr. Jehovah, at least that their initial diagnosis was incorrect, yet they deliberate indifference. I thought that meant that mental health experts didn't agree with the physical health experts. That certainly would be one way to read the complaint, your honor. However, Mr. Jehovah's symptoms continue to worsen, which would suggest that someone has gotten it wrong here. And the mental health experts at one point refused to see Mr. Jehovah because they had that, they concluded that none of the physical symptoms that he was suffering were attributable to mental health issues. And at some points, even the VDOC physicians refused to see Mr. Jehovah as well. So he was receiving no treatment from anyone. We would argue that this case is akin to the circuit's decision in Delonta, where physicians knew that the course of treatment or their diagnosis was wrong, yet continued to insist that the inmate continue with that course of treatment, even though the inmate's symptoms were worsening. Simply put, on that claim, you concede that the proper course of treatment, you can't challenge that. But what I understand your claim to be is failure to treat in the first instance. Is that the gist of your complaint? That is correct, your honor. There's a failure to treat because the physicians never diagnosed Mr. Jehovah in the first instance. And as the court may be aware, based on the other filings that Mr. Jehovah has filed with this circuit, his symptoms indeed did worsen. And then he was diagnosed eventually with having a heart condition. But he was provided no treatment over the course of almost two years. Well, I shouldn't say no treatment, because obviously there were some symptoms that the VDOC defendants did try to address. So, for example, he did have some rashes and they did provide some ointment. But the serious symptoms, the headaches, the chest pains, there were x-rays provided, but no other diagnosis other than to continue to refer him to mental health experts. Unless the court has further questions, I will reserve the rest of my time for rebuttal. All right, let's hear from Mr. Cox. Chief Judge Traxler, may it please the court. Trevor Cox for Defendant's Appellees. With one exception, the district court's dismissal of Mr. Jehovah's religious exercise claim should be affirmed. As we noted in our response brief, the one exception is his communion wine claim under RLUIPA, which we agree should be remanded for further development. I'd like to make four points today. First, Jehovah did not adequately allege that sharing a cell with someone possessing different beliefs substantially burdens his own religious exercise. This is fatal to both his First Amendment and RLUIPA claims, which the district court properly screened under the PLRA. Second, Jehovah did not adequately allege that prison policy prevented him from serving two Sabbath days, thereby substantially burdening his religious exercise. Third, Jehovah's communion wine claim under the First Amendment fails because the prison's no alcohol policy is reasonably related to legitimate penological interests. But that is Mr. Jehovah's entitlement to a particularized evaluation, not as to the general population. You seem to say that, well, there might be some other people there who are drinking alcohol, and they're alcoholics, but Mr. Jehovah is entitled to a personalized or individualized assessment, which was not done in this case. Your Honor, at this stage, actually under the PLRA in 1959, he's not entitled to a particularized assessment at this stage. I would point you to the Veeney case in 2002, where a claim was dismissed under Turner, where he didn't apply the Turner factors in this case either. I'm sorry? He didn't apply the Turner factors. He did not. That doesn't prevent this court from affirming for different reasons. Under the Cochran case, I believe it was in 1996, this court has recognized that you can affirm on any grounds that are evident in the record, and they've done that freely in cases involving prisoner claims. But that puts you in the awkward position of coming up here and arguing grounds to affirm that we're not what the district court relied on. It's a somewhat awkward position, perhaps, but I welcome it. I'd be happy to walk through the Turner analysis if the court likes. It's set forth in our response brief on pages 30 and 34. But if you'd like me to walk through that analysis, I'd be happy to. But then that requires us to go through the analysis and requires us to do it in the first instance, because the district court hadn't done it yet. There is enough evidence in the record, though, Your Honor, to support an application of the Turner test. There was an affidavit that was put forward to defeat the RLUIPA claim. But that's only for the communion-wide issue, though, isn't it? That's correct. But I'm happy to address the other ones, which don't need to be addressed under Turner, because the plaintiff has failed to particularly allege there was a substantial burden on his RLUIPA sex or sex abuse, so you don't need to get to Turner. Finally, his medical treatment claim fails because his allegations on their face do not show that prison medical officials had actual knowledge of the complaint of symptoms, and that's what's required for deliberate indifference, as the judges have suggested. And Jehovah's Own allegations also show, and Plaintiff's Counsel has indicated, that medical staff did treat him for issues that they are identified as real. So the district court was correct to screen out these claims out in the first instance, under the PLRA, which requires that for cases to move forward, the allegations have to be more than speculative and actually rise to the level of plausibility. So turning to these points, first, Jehovah didn't carry his burden of alleging that sharing a cell with someone possessing different religious beliefs substantially burdened his religious exercise. Jehovah makes the general assertion that VDOC staff harassed him by purposely selling him with inmates of other religious beliefs. But he doesn't make particularized allegations on this point. As evidence of this harassment, he says, and this is on page 29 of the Joint Appendix, the VDOC staff are black African-Americans, and many or all of them from communities known to espouse and promote racial and religious hostility toward white Christian men, such as plaintiffs, specifically. He goes on, same paragraph, it appeared to plaintiff that based on their verbal and nonverbal conduct and expressions that all such staff have and have held some racial and or religious animus towards and against plaintiff. These speculative allegations are not sufficient to nudge his claim over the line from conceivable to plausible. Jehovah invites the court to take into account the beliefs of his cellmate as part of his own religious exercise. But being exposed to somebody else's religious beliefs does not substantially burden one's own exercise or prevent one from engaging in religiously expressive behavior. But doesn't he allege they deliberately put non-Christians in the cell with him? That is a general allegation, but there's no specific particularized allegations to back that up. Well, isn't that plausible enough to get him past the 12B6? I don't believe so, Your Honor. I think it's entirely too speculative for it to move forward. I mean, his housing situation doesn't constrain his religious behavior. It doesn't prevent him from praying and studying and meeting with others and attending services. It doesn't deny him a reasonable opportunity to engage in activities that are fundamental to his religion. What he said is he's been housed with a sadist, right? A satanist. A sadist, right? Yeah. That's pretty extreme, isn't it, if it's done deliberately. Would you, for example, you think the Department of Correction would put the person who has swastika tattoos all over his chest with someone who, for example, is African-American or Jewish person? Do you think they would just house them together and say, well, it doesn't make a difference. Somebody has a swastika. You can live with them. Do you think they would do that? Well, as plaintiff has... Could you address that? Do you think they would do that? I'll address that. As plaintiff alleged, there are certain considerations of safety and security that VDOC staff certainly take into account. So you're not going to answer my question? No, I'm getting to it. You're getting to it? You're here now. Answer it. You can imagine situations where... No, I don't have to imagine. I just gave you a hypothetical. You can imagine situations where, no, you wouldn't do that because of safety and security concerns. Can you imagine one where you would? If there were no safety concerns at issue, and if people happen to have different religious beliefs, yes, you can. Well, I guess you didn't hear my hypothetical. Go ahead. If there were no safety and security concern, a prison is not required to house people of the... But he said you did that deliberately because he was the fly in the ointment. He was someone who made complaints. He said, okay, all right, I got a roommate for you. I'm going to put a satanist in there with me. That's what he said. That's his allegation. In fact, it says that he, in a self-particularized allegation, that it was part of a deliberate plan by VDOC staff. We accept that as being true, correct? If it's sufficiently specific and rises beyond the level of speculativeness. But you're not required to accept as true allegations that are merely conclusory or unwarranted deductions of fact or unreasonable inferences. The truth is, and Plaintiff has said this, that he was housed with seven different cell mates between July 2011 and July 2012, and not one of them was acceptable to Jehovah. One of them was a professed Christian. Jehovah said he wasn't a Christian. He was a false, insincere Christian, but a Christian nonetheless. And perhaps it's not surprising he didn't find him acceptable because he has condemned all Christians who happen to believe that grape juice could substitute for wine at communion ceremonies. He says those people are under evil influence and sin against God, Christ, and God's spirit. So presumably that includes even the ministers who lead the wine-free communion services at VDOC. So for those reasons, I don't think he's met his pleading burden of alleging that his religious exercise has been substantially burdened. Second, he didn't carry his burden of alleging that VDOC prevents him from observing two sabbaths, thereby substantially burdening his religious exercise. This is true for several reasons. First, he alleges that he has work or program obligations for 30 to 40 hours a week. You heard Plaintiff's counsel say that. But he doesn't allege that he cannot completely satisfy his weekly obligations through programming and educational opportunities during weekdays only. So even if he were required to have a job, rather than combining with education and programming activities, he concedes that weekday jobs, weekday-only jobs do exist. He's just upset that there's not more available to him. They try to argue it away, but his allegation speaks for itself. And this is paragraph 32 on Joint Appendix 27. He says, quote, there are few prison jobs available to him at Sussex One Prison and other prisons which he can work and keep observing the sabbaths. He hasn't alleged that he has applied for and been denied from each of those jobs. Instead, he asks that defendants, quote, accommodate him and set schedules for all prison jobs, enabling and accommodating sabbath observance. That's also in paragraph 32, apparently so that he can have the particular job he wants, but only when he wants to work it. And the district court was right. A prisoner has no right to any employment, let alone a greater range of jobs from which to choose. So for these reasons, Jehovah has not met his pleading burden of alleging that B. S.  was a drunkard, which would have prevented him from observing two sabbaths. Third, Jehovah cannot prevail on his communion wine claim under the First Amendment. We discussed this earlier. Assuming the prison's no alcohol policy substantially burdens the religious exercise of inmates who wish to drink two to five ounces of wine at communion ceremonies, rather than grape juice or to observe communion without wine, Jehovah still fails to carry his burden under Turner because the prison's no alcohol policy is reasonably related to legitimate penological interests. But you didn't consider any of his proposed accommodations at all. He wasn't just absolutely wed. He has to have a cup in his hand, and where the wine comes from, who controls it. It seems to me that he's claiming that you didn't consider any accommodation. Turner is not a least restrictive means test. It says it in the opinion itself. I'm not talking about Turner now. I'm talking about the accommodation allocation that he made. On which point you're on? On the wine. On the wine. Well, with respect to the Ralupa claim, we agreed that that should be remanded under Ralupa because that does require, that is a least restrictive means test under the statute itself. Under Turner, however, the First Amendment claim is not a least restrictive means test, and Turner court itself says that a prison doesn't need to sit up and reject all alternatives. Turner is a test of mere reasonableness that's intentionally deferential to prison officials. The Turner court itself recognized that subjecting, this is a quote, subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper the ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. That's Turner, 482 U.S. at 89. And these day-to-day judgments include questions of housing, of prisoner training, and whether to allow controlled substance into the facility. Are you arguing that Turner doesn't require any examination of alternatives? If you get to the Turner test, the fourth factor, I believe, does ask whether there's an easy and obvious policy, but it's not a least restrictive means test. And there are instances where a court, and I cited this earlier, but the Veeney case, where the district court screened a claim out under Turner under 1915a, and that was later affirmed by this court in Veeney. Well, did the district court examine alternatives at all, or is any evidence submitted by the Department of Corrections that showed they considered alternatives on the wine communion issue? So there was an affidavit put forward on summary judgment, and we have conceded that the affidavit is not sufficient as a least restrictive means. However, it did set forth the alternatives that the prison has used over the last few years. So I think you could fairly read that as considering alternatives that the prison has considered over the past years and rejected them, because that's why we got to the policy where we are now. Prison officials don't have to wait for things to go wrong before implementing a policy. The Supreme Court has said that. Prison life contains the ever-present potential for things to go wrong, and responsible prison officials must be permitted to take reasonable steps to forestall such a threat. So for those reasons, the prison's no-out-law policy doesn't violate the First Amendment. Finally, with respect to Jehovah's medical treatment claim, he fails to show that medical officials were deliberately indifferent. Deliberate indifference is more than mere negligence, as this Court is well aware. It requires that a prison official actually know of an objectively serious condition. Now, the lower court assumed arguendo that plaintiff's medical issues were sufficiently serious, but found that medical staff could not have been liable because they were not actually aware of medical issues. And typical of Jehovah's allegations is the one that in April 2012, he met with Dr. Uleth, who, quote, would not acknowledge the symptoms Dr. King and Dr. Hebraeus repeatedly concluded did not exist. That's paragraph 67, note 30 of the complaint. So Jehovah himself concedes that he did not have actual knowledge. By his own account, three different doctors and a licensed nurse practitioner met with over a dozen times between June 2010 and April 2012, and repeatedly concluded that the symptoms he claimed did not exist in reality. For instance, in December 2010, Dr. Hebraeus concluded Jehovah did not have symptoms and diagnosed him as having a somatization disorder, quote, where the symptoms are not real or physical, but merely psychological. That's paragraph 51 of the complaint. That's Jehovah's allegation. He says again in June 2011 that Dr. King met with him, and according to Jehovah, concluded Jehovah had no symptoms. That's paragraph 55. Paragraph 64, August 2011, a licensed practical nurse, quote, denied the existence of all of his symptoms except for the rashes, which he was treated for. So Jehovah didn't plausibly allege that the medical staff actually knew of a condition and failed to treat him. On the other hand, as plaintiff's counsel has acknowledged, he did receive treatment for the things that the medical staff identified. So because he failed to adequately allege the medical staff actually knew of these conditions, his deliberate indifference claim was properly dismissed. Your honors, for matters like this one that are subject to screening under the PLRA, it's the pleading standards that act as a flood wall, preventing meritless cases from streaming into the courts. Here, Jehovah has not adequately pleaded that VDOT's policies impose the substantial burden on his religious exercise. His allegations simply do not rise to the level of plausibility required by Iqbal and Twombly. The district court was correct to screen out the claims as sufficient, which is just what the PLRA allows and intends, and this court should affirm that judgment. Thank you. Thank you. Mr. Cox, Mr. Kingo, reply. Your honors, Mr. Jehovah alleged sufficient facts and complaint with respect to the claims that were summarily dismissed. With the cell assignment claim he alleged specifically in footnote, 18 of his complaint that his cell assignments have been in violation of VDOT's policies to consider, as I mentioned in my opening, disciplinary action, criminal history, and other factors. He also alleges in paragraph 36 of his complaint that when he was housed with a Satanist, he was specifically told that he hoped that the Satanist views rubbed off on him. With respect to his Sabbath claims, Mr. Jehovah explains in paragraph 31 that he has applied for jobs, but that since pressing for the observance of his Sabbaths, VDOC has refused to accommodate his Sabbaths and let him work. And then turning to the Turner factors, there has been a change in policy, and VDOC has not put forward any evidence to explain why that change in policy occurred over several years. This court has no record on which to judge whether or not the Turner factors were met here, but if anything, the one declaration the court does have establishes that the change in policies has been arbitrary because VDOC at one point allowed inmates to consume wine with alcohol, and alcohol continues to come into the facility today, except only the clergy are allowed to consume that wine. Finally, with respect to the Eighth Amendment claim, Mr. Jehovah alleges that the VDOC doctors did not acknowledge all of the symptoms, all of the serious symptoms that he had, meaning that he had these symptoms, but the VDOC physicians turned a blind eye to them. He also alleges that there are others who have visited him who observed the serious symptoms that he was suffering from, and that can be found in paragraphs 49 and 50 in Joint Appendix 38, 31, and also in footnote 24, which is found on Joint Appendix page 33. And unless the court has additional questions, I respectfully request that the court remand on all the claims that Mr. Jehovah has raised on appeal. Thank you, Ms. Kingo. I note that you're court appointed. We appreciate very much your understanding and representation of this client. Professor, thank you. Also, you always provide high-quality representation for the cases that you volunteer to take on behalf of your students, and we appreciate that every time. Thank you. We're going to come out and bring counsel and then take a short break to reconstitute the panel. Thank you.
judges: William B. Traxler, Jr., Roger L. Gregory, Henry F. Floyd